**EXXON CORPORATION, Plaintiff,**

v.

**FEDERAL ENERGY OFFICE et al.,**
**Defendants.**

**Civ. A. No. 74–921.**

United States District Court,
District of Columbia.

July 17, 1974.

Robert B. Owen, Robert G. Nunn, Jr., Jay Lapin, Washington, D. C., Robert L. Norris, Houston, Tex., Edwin Jason Dryer, Washington, D. C., for plaintiff.

Paul Michael, Stanley Rose, Dept. of Justice, Washington, D. C., Robert E. Montgomery, Gen. Counsel, Federal Energy Administration, Washington, D. C., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

AUBREY E. ROBINSON, JR., District Judge.

This matter came before the Court on plaintiff's motion for a preliminary injunction. The Court having considered the motions, pleadings, affidavits and briefs filed by the plaintiff, the defendants and the interveners, and having heard oral arguments of counsel for all parties, makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. Plaintiff Exxon Corporation ("Exxon") is a corporation organized and existing under the laws of the State of New Jersey. Exxon's principal place of business is in New York. Exxon is engaged in the business of producing, refining, and selling crude oil and petroleum products in the United States and various other countries.

2. Defendant Federal Energy Office ("FEO") was established by Section 1 of Executive Order 11748 and had the responsibility for interpreting, implementing, administering and enforcing the provisions of the Emergency Petroleum Allocation Act of 1973, P.L. 93–159, 87 Stat. 627 ("Petroleum Act").

3. On June 27, 1974, (39 F.R. 23185), the Federal Energy Administration ("FEA") was established by Executive Order 11790 pursuant to the authority of the Federal Energy Administration Act of 1974, P.L. 93–275, 88 Stat. 96. The FEO was abolished by Section 5 of Executive Order 11790. All

powers conferred upon the President by the Petroleum Act were delegated to the Administrator of the FEA by Section 2 of Executive Order 11790.

4. Defendant John C. Sawhill was the Acting Administrator of the FEO and is presently the Administrator of the FEA. Defendant Sawhill, as Administrator of the FEA, has been delegated all powers and duties conferred upon the President by the Petroleum Act. Defendant Sawhill, furthermore, is vested with all powers conferred by the Federal Energy Administration Act of 1974.

5. Defendant John W. Weber is the Assistant Administrator of the FEA, formerly of the FEO, for Operations, Regulation and Compliance with administrative responsibility for, among others, the crude oil allocation program administered by the FEA.

6. Intervener Independent Refiners Association of America ("IRAA") is a non-profit corporation organized and existing under the laws of the District of Columbia. The IRAA is an association of independent petroleum refiners who refine crude oil. The members of IRAA are corporate entities organized, existing and operating in the various States.

7. Ashland Oil, Inc. ("Ashland") is a refiner of crude oil and as such is an "independent refiner" as that term is defined in Section 3(3) of the Petroleum Act.

8. Pursuant to the Petroleum Act and the delegations of authority contained in the Executive Orders, the FEA issued regulations to provide for, among others, the allocation of crude oil.

9. The FEA issued 10 C.F.R. § 211.-64(a) (39 F.R. 1932, January 15, 1974), as amended (39 F.R. 3908, January 30, 1974), as revised 10 C.F.R. § 211.63(a) (39 F.R. 17288, May 14, 1974) (herein the "December 1 Regulation"). The December 1 Regulation provides, in pertinent part, that all supplier/pur-chaser relationships in effect under contracts for sales, purchases, and exchanges of domestic crude oil on December 1, 1973, are to remain in effect for the duration of the mandatory allocation program. The December 1 Regulation applies to all contracts for sales, purchases and exchanges within the whole petroleum industry.

10. Pursuant to the December 1 Regulation, Exxon is required to sell approximately 130,000 barrels of crude oil per day to other refiners. Under the December 1 Regulation, Exxon is also entitled to receive, through contracts for purchases or exchanges in existence on December 1, 1973, approximately 868,-000 barrels of crude oil.

11. The FEA also issued 10 C.F.R. § 211.65 (39 F.R. 1927, January 15, 1974), as amended (39 F.R. 17288, May 10, 1974) (herein the "Buy/Sell Regulation"). The Buy/Sell Regulation provides for the mandatory allocation of crude oil among refiners existing within the refining sector of the petroleum industry.

12. Under the Buy/Sell Regulation the FEA issues a buy/sell list on a quarterly basis which sets forth the purchase opportunities and sales obligations of all domestic refiners. The first buy/sell list was in effect for the period of February 1 through April 30, 1974, and then was extended on a pro-rata basis for the month of May, 1974.

13. Under the buy/sell list mentioned in paragraph 11 above, Exxon was obligated to sell approximately 1,000 barrels of crude oil per day.

14. The Buy/Sell Regulation was amended on May 10, 1974, and, in accordance therewith, the FEO issued a buy/sell list on June 7, 1974 (39 F.R. 20276), as amended (39 F.R. 22354, June 21, 1974), for a period of June 1 through August 31, 1974.

15. Under the buy/sell list issued for the period of June 1 through August 31, 1974, Exxon is obligated to sell approxi-

mately 95,000 barrels of crude oil per day.

16. Exxon sought administrative relief from the FEO from the provisions of the December 1 Regulation. The request for administrative relief from the FEA eventually took the form of a request for an exception from the December 1 Regulation.

17. Exxon's request for an exception described in paragraph 15 above was denied by the FEA on June 14, 1974. Exxon appealed the decision of the FEA and such appeal was denied on June 26, 1974, by the FEA.

18. Section 4(a) of the Petroleum Act directed the FEO to issue regulations to provide for the mandatory allocation of, among others, crude oil.

19. Sections 4(b)(1)(A) through (I) of the Petroleum Act set forth broad objectives which the regulations, mentioned in paragraph 17 above, were to provide for to the maximum extent practicable.

20. Section 4(c) of the Petroleum Act provides in pertinent part, that the regulations mentioned in paragraph 17 above, to the extent practicable and consistent with the objectives of Sections 4(b) and 4(d) of the Petroleum Act, should result in the allocation of crude oil to each small and independent refiner in an amount not less than the amount sold or otherwise supplied to such refiners during the corresponding period of 1972, adjusted to take into account any existing overall shortages. The terms "small refiners" and "independent refiner" are specifically defined in Section 3 of the Petroleum Act.

21. Exxon, by its motion for a preliminary injunction, requests an injunction against its obligation to sell approximately 130,000 barrels of crude oil per day under the December 1 Regulation. In the alternative, Exxon requests an injunction against its obligation to sell 95,000 barrels of crude oil per day under the Buy/Sell Regulation.

22. The December 1 Regulation and the Buy/Sell Regulation were implemented by the FEA to accomplish different objectives. The December 1 Regulation was implemented to continue supplier/purchaser relationships existing on December 1, 1974, within the whole petroleum industry and prevent a disruption in the existing distribution system for domestic crude oil. The December 1 Regulation, furthermore, was implemented to assure small and independent refiners continued access to lower-cost domestic crude oil. The December 1 Regulation, furthermore, was implemented to provide a foundation upon which a mandatory allocation program could be implemented by the FEA.

23. The Buy/Sell Regulation provides for allocation of crude oil solely among refiners. The Buy/Sell Regulation in existence for the first allocation quarter (February 1 to April 30, 1974) and then extended through May 31, 1974) was implemented to assure adequate supplies of crude oil for all refiners who were experiencing deficiencies of crude oil during that period of time. The Buy/Sell Regulation in existence for the current allocation quarter is designed to continue supplying crude oil only to small and independent refiners in accordance with Section 4(c)(1) of the Petroleum Act. The refiners who are eligible to purchase crude oil under the current Buy/Sell Regulation are only those refiners who fall within the definition of a small or independent refiner under Section 3 of the Petroleum Act.

24. Exxon has not made a sufficient showing that it incurs an actual monetary loss for the oil it is required to sell under the December 1 Regulation, nor that such loss, if any, would be irreparable.

25. Exxon has not made a sufficient showing that it incurs an actual monetary loss for the oil it is required to sell

under the Buy/Sell Regulation, nor that such loss, if any would be irreparable.

26.  Exxon also alleges a monetary loss based upon their claim that foreign crude oil which Exxon purchases for its own refinery runs to replace crude oil sold under either the December 1 Regulation or the Buy/Sell Regulation is more expensive than the crude oil which it is required to sell to small and independent refiners under either the December 1 Regulation or the Buy/Sell Regulation.  Exxon's claim of monetary loss, however, is problematical and is not sufficient to establish a finding of irreparable harm, because FEA's pricing regulations permit Exxon to recover all such increased product costs, on a dollar-for-dollar pass-through basis, in the prices Exxon charges for its refined petroleum products.  Major refiners as a whole have lower weighted average crude oil costs than small and independent refineries.  Exxon, furthermore, has one of the lowest weighted average crude oil costs of all major refiners.

### CONCLUSIONS OF LAW

1.  This Court has jurisdiction over this action under Section 5(a) of the Petroleum Act.

2.  Exxon has not demonstrated a substantial likelihood of success upon the merits of this action.

3.  Exxon has not demonstrated that it is suffering irreparable injury.

4.  Exxon has not demonstrated that its injury, if any, outweighs the injury which defendants, interveners and the public interest would incur should a preliminary injunction be issued.

5.  Defendants and interveners have demonstrated that they, and the public interest, would be irreparably harmed if a preliminary injunction is granted to Exxon.

6.  Exxon's motion for a preliminary injunction against either the December 1 Regulation or the Buy/Sell Regulation should be denied.